**Jon FEMEDEER, a pseudonym, Plaintiff,**

v.

**N.D. "Pete" HAUN, Executive Director, Utah Department of Corrections, John Does 1–X and Jane Does 1–X, Utah Department of Corrections employees, officers, and agents, Defendants.**

No. 2:98 CV 572 K.

United States District Court, D. Utah, Central Division.

Jan. 22, 1999.

Brian M. Barnard, James L. Harris, Jr., Utah Legal Clinic, Salt Lake City, UT, for Jon Femedeer, plaintiff.

John P. Soltis, Mr., Utah Attorney General's Office, James H. Beadles, Mr., Utah Attorney General's Office, Salt Lake City, UT, for N.D. Pete Haun, defendants.

## ORDER

KIMBALL, District Judge.

Before the Court is Plaintiff's Motion for Summary Judgment and Permanent Injunction.

### BACKGROUND

Plaintiff Jon Femedeer challenges the constitutionality of recent amendments made to Utah's sex offender registration and notification statute, *Utah Code Ann. § 77–27–21.5 (Supp.1998)*. Since 1987, Utah has maintained a registry of persons convicted of, or entering a plea in abeyance for, violating certain sex-related provisions of Utah's criminal code. *See § 77–27–21.5(1)(d) (Supp. 1998)*.

Pursuant to amendments to the statute effective April 29, 1996, information maintained on the registry, including an offender's place of habitation, physical description, and method of offense, were made available to the public on a limited basis. In addition to law enforcement agencies and Utah's Office of Education, the victims of sexual offenses and residents in a location where a sex offender was suspected to reside were entitled to receive information upon the submission of a written request. *§ 77–27–21.5(2)(b) (Supp.1996)*. The public disclosure provisions of the statute did not apply retroactively to offenders who had completed their sentences and any requirements of probation prior to April 29, 1996. *§ 77–27–21.5(19) (Supp.1996)*.

During the 1998 legislative session, the statute was amended, effective July 1, 1998, in two significant respects. First, the statute was amended to make registry information available to the public without restriction. *See § 77–27–21.5(2)(b) (Supp.1998)*. Second, the restriction against retroactive application was removed.

Defendant Utah Department of Corrections (the "Department") is the state agency charged with the collection and dissemination of registry information. *See § 77–27–21.5(2) (Supp.1998)*. The Department is authorized, but not required, to make rules necessary to implement the statute. *See § 77–27–21.5(17) (Supp.1998)*. Without promulgating rules,

the Department intends to make registry information available to the public without restriction via its Internet website (www.cr.ex.state.ut.us/soreg/info). Moreover, the Department intends to include offenders who were convicted and completed the terms of their sentences prior to April 29, 1996.

Plaintiff is such an offender. He alleges that he committed a listed crime, was sentenced, and completed all the terms and conditions of his sentence both prior to July 1, 1998, and prior to April 29, 1996. Plaintiff brings suit pursuant to 42 U.S.C. § 1983, alleging that enforcement of the statute's public disclosure provisions violates the United States Constitution in three respects. First, Plaintiff alleges that application of the public disclosure provisions to offenders who completed the terms of their sentences and probation prior to July 1, 1998, violates the Ex Post Facto, Double Jeopardy, and Bill of Attainder Clauses. Second, Plaintiff alleges that the public disclosure provisions violate the Equal Protection Clause of the Fourteenth Amendment by classifying all sex offenders together without regard to the threat an individual offender poses to public safety. Third, Plaintiff alleges that the public disclosure provisions violate the Due Process Clause of the Fourteenth Amendment by depriving offenders of their interests in privacy and reputation without procedural due process. Plaintiff does not challenge the constitutionality of the statute's registration provisions.

## DISCUSSION

### I. Constitutionality Under the Ex Post Facto and Double Jeopardy Clauses.

#### A. Legal Standard.

■ For a statute to violate either the Ex Post Facto Clause or the Double Jeopardy Clause,[1] that statute must be deemed "punishment." *See Kansas v. Hendricks,* 521 U.S. 346, 117 S.Ct. 2072, 2085–86, 138 L.Ed.2d 501 (1997). *A two-part inquiry determines whether a particular civil statute constitutes punishment under these clauses. In the first stage of the inquiry, a reviewing court must ascertain whether the legislature intended the statute to serve remedial, nonpunitive aims. Such intention is to be determined, in the first instance, from a review of the statute itself.* Id. *at 2081–82.*

In the second stage of the inquiry, the effects of the statute in operation are examined. At this stage, the party challenging the statute bears a "heavy burden" to provide "the clearest proof" that the statutory scheme is so punitive either in purpose or effect as to negate the legislature's intention to deem it civil. *Id.* at 2082 *(internal quotation marks and citation omitted).* In the absence of such proof, the legislature's stated intent is dispositive. *Id.*

■ Whether the adverse affects of a particular statute constitute punishment in violation of either the Double Jeopardy or the Ex Post Facto Clause is "a highly context specific matter." *Doe v. Pataki,* 120 F.3d 1263, 1275 (2d Cir.1997), *cert. denied* —— U.S. ——, 118 S.Ct. 1066, 140 L.Ed.2d 126 (1998). A universally-applicable legal standard or test has not been devised, and neither the Supreme Court nor the Court of Appeals for the Tenth Circuit has addressed the constitutionality of a sex offender registration and notification act under these, or any other, constitutional provisions. However, such acts have been subjected to analysis in several federal circuit and district courts, and a set of factors relevant in this context has emerged. *See Id. (analyzing New York's Sex Offender Registration Act); E.B. v. Verniero,* 119 F.3d 1077 (3d Cir.1997) (analyzing New Jersey's Sex Offender Registration and Community Notification Acts), *cert. denied* —— U.S. ——, 118 S.Ct. 1039, 140 L.Ed.2d 2105 (1998); *Russell v. Gregoire,* 124

1. Plaintiff has not separately briefed his claim that the public disclosure provisions violate the Bill of Attainder Clause, except to note that the central inquiry under the Ex Post Facto, Double Jeopardy, and Bill of Attainder Clauses is whether the challenged provisions impose punishment. The elements to establish a violation of the Bill of Attainder Clause are different than the elements necessary to establish a violation of the Ex Post Facto or Double Jeopardy Clauses. *See Roe v. Farwell,* 999 F.Supp. 174, 193 (D.Mass.1998). *As a consequence, this Court considers Plaintiff to have waived any claim pursuant to that clause.*

F.3d 1079 (9th Cir.1997) (analyzing Washington's Community Protection Act), cert. denied — U.S. ——, 118 S.Ct. 1191, 140 L.Ed.2d 321 (1998); *Roe v. Farwell,* 999 F.Supp. 174 (D.Mass.1998) (analyzing Massachusetts' Megan's Law).

These factors include whether a statute's notification provisions: 1) impose an affirmative disability or restraint; 2) impose a burden that has historically been regarded as punishment; 3) promote retribution and deterrence; 4) further a legitimate, nonpunitive purpose; and 5) are excessive beyond their legitimate purpose.[2] No single factor has been considered dispositive.

### B. Legislative Intent.

Plaintiff argues that the Utah legislature has not made its intent clear on the face of the statute, apparently, and erroneously, believing that the text of the statute must contain an explicit statement of the legislature's intention. Such explicitness is not required. Legislative intent to enact a nonpunitive measure is ascertainable from the simple fact that the legislature placed the statute in the civil code as opposed to the criminal code. *See Hendricks,* 117 S.Ct. at 2082. Moreover, the statute contains an unambiguous statement of its purpose in *§ 77–27–21.5(2),* which directs the Department to collect registry information and make it available to the public "to assist in investigating sex-related crimes and in apprehending offenders." This intent is clearly remedial.

Remedial intent is also evident from the statement the statute's sponsor gave in setting the measure before the House of Representatives.[3] Representative Brian Allen explained that the measure was motivated primarily by concerns of administrative convenience arising from the Department's inability to process and respond to the numerous legitimate requests for registry information that it had received, including a request to check approximately 100,000 volunteers submitted by the Boy Scouts. The 1998 amendments were simply intended to give the Department flexibility to adopt an administratively convenient disclosure method. *Audio tape of Floor Proceedings Before the Utah House of Representatives, Feb. 28, 1998.*

Plaintiff has failed to direct the Court to contrary legislative history. Therefore, the burden shifts to Plaintiff to provide "the clearest proof" that the statute is so punitive either in purpose or effect as to negate the legislature's intention.

### C. Purpose and Effects.

*1. Whether the public disclosure provisions impose an affirmative disability or restraint.*

Plaintiff argues that public disclosure imposes an affirmative disability and restraint on offenders in the sense that disclosure will cause them to be ostracized by the community—resulting in the loss of employment, housing, and opportunities for "free association" and "participation" in society. At the outset, it must be noted that the record is devoid of any evidence that such ostracism will occur. Plaintiff's concerns are merely speculative.

However, even if this Court were to assume that offenders subject to the operation of the statute's public disclosure provisions will be less free to "participate" in society, such consequences would not transform the statute into a punitive one. Not every detrimental consequence of a statute is to be attributed to it for purposes of this analysis. Only the direct effects of a statute are to be assessed. Indirect effects, like public stigma, loss of employment, and even private acts of violence,[4] that are not re-

---

**2.** These factors are largely derived from the seven factors delineated by the Supreme Court in *Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 168–69, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963). See *Pataki,* 120 F.3d at 1275 (discussing utility of Mendoza–Martinez factors in this context);*Russell, 124 F.3d at 1091–93) (utilizing certain Mendoza–Martinez factors); Farwell,* 999 F.Supp. at 185 (same).

**3.** "The views of a law's sponsors, though not conclusive, are [also] entitled to considerable weight." *Pataki,* 120 F.3d at 1277.

**4.** Illegal acts undertaken by third parties are not attributable. "Indeed, courts must presume that law enforcement will obey the law and protect offenders from vigilantism." *Russell,* 124 F.3d at 1092.

quired or condoned under the statute, are not to be considered. *Farwell*, 999 F.Supp. at 191 ("Circuit courts that have addressed this issue have not been persuaded by arguments concerning the risk of physical violence, stigma, or impairment of employment opportunities such as Roe advances here."); *Pataki*, 120 F.3d at 1279–80; *Verniero*, 119 F.3d at 1104–05 *(ruling misuse of registry information, including private acts of retribution, are not attributable to statute)*.

Even when the detrimental effects of a statute are direct, they must be "extremely onerous." *Verniero*, 119 F.3d at 1101. *Consequences as drastic as deportation, deprivation of one's livelihood, and termination of social security benefits have not been considered sufficient. Id.; Pataki*, 120 F.3d at 1279. The effects feared by Plaintiff do not rise to this level. Finally, even a statute's direct detrimental effects "must still be evaluated in light of the importance of any legitimate governmental interest served." *Verniero*, 119 F.3d at 1101. Given the life-long and well-documented horrors to which the victims of sex offenses are subjected, any feelings of shame or humiliation that offenders may endure as a by-product of the operation of a measure designed to limit the amount of additional harm they inflict is not sufficient.

As other courts have concluded, it is not the statute that prompts some people to treat sex offenders less favorably. The adverse consequences feared by Plaintiff stem primarily from a registrant's past criminal activity. "[A]lthough notification conveys to the public the information that prompts some people to take unlawful action against the convicted sex offender, it is the offender's prior conviction—or, more precisely, the offender's criminal act itself—that motivates such hostile action." *Pataki*, 120 F.3d at 1280.

*2. Whether the public disclosure provisions impose a burden that has historically been regarded as punishment.*

Plaintiff argues that public disclosure is tantamount to branding him with the sanction described in Hawthorne's *The Scarlet Letter*, a form of sanction that has been historically regarded as punishment. This analogy has been rejected by the federal courts that have addressed it. It fails because holding a convicted defendant up to public ridicule involves more than the disclosure of publicly-available information. "Public shaming, humiliation and banishment all involve more than the dissemination of information. State dissemination of information about a crime and its perpetrators was unnecessary in colonial times because all in the colonial settlement would have knowledge of these matters." *Verniero*, 119 F.3d at 1099; see also *Farwell*, 999 F.Supp. at 189–190. There are better historical analogies—particularly the collection and dissemination of information generated by the criminal justice system to regulatory agencies, bar associations, and prospective employers. *Verniero*, 119 F.3d at 1100; *Russell*, 124 F.3d at 1092. Dissemination of such information has never been considered punitive.

Importantly, sanctions such as public shaming and banishment were intended to and did "visit society's wrath directly upon the offender." *Russell*, 124 F.3d at 1092 (internal quotation marks and citation omitted). *The statute at issue here is not intended to be punitive, but to "avert new and tragic sexual offenses." Id.* at 1091.

*3. Whether the public disclosure provisions promote retribution and deterrence.*

Plaintiff argues that public disclosure serves the two traditional goals of punishment—retribution and deterrence—by leading to humiliation and ostracism, which both penalize offenders and deter them from committing further criminal acts. However, a statute does not punish merely because it works a detriment or causes humiliation. A more nuanced analysis is required.

As the Supreme Court has explicitly recognized, measures intended to have a mixed salutary and deterrent effect will not automatically be rendered punitive as a consequence. *U.S. v. Ursery*, 518 U.S. 267, 116 S.Ct. 2135, 2149, 135 L.Ed.2d 549 (1996) *("Though both statutes may fairly be said to serve the purpose of deterrence, we long have held that this purpose may serve civil as well as criminal goals.")*. However, neither the Supreme Court nor the Court of Appeals for

the Tenth Circuit has defined the parameters of a mixed measure that satisfies constitutional requirements. The Third Circuit has done so, and this Court adopts its standard:

Such mixed measures will not be deemed to have an objectively punitive purpose despite their deterrent purpose unless that deterrent purpose is an unnecessary complement to the measure's salutary operation, the measure is operating in an unusual manner inconsistent with its historically mixed purposes, or the deterrent purpose overwhelms the salutary purpose.

*Verniero,* 119 F.3d at 1093.

Like the purpose of public disclosure under the statute at issue in *Farwell,* the purpose of public disclosure under this statute "is to reduce the likelihood of re-offense by a sexual offender by giving law enforcement necessary information to be aware of potential dangers, the public necessary information in order to take appropriate steps to minimize a harmful encounter with a sex offender, and to deter the sex offender from reoffending because of the increased likelihood of apprehension." 999 F.Supp. at 190. The *Farwell* court found that this deterrence objective was insufficient to render the notification provisions punitive, as there were "underlying legitimate governmental public security purposes." *Id.* This Court reaches the same conclusion.

The *Farwell* court also found that the retributive effects of the statute could not be attributable to the government. *Id.* This Court again reaches the same conclusion. As previously discussed, public ostracism is not a consequence that can be attributed to the operation of the statute.

*4. Whether the public disclosure provisions are excessive beyond their legitimate purpose.*

For the public disclosure provisions to pass constitutional muster, they must be reasonably related to their legitimate, nonpunitive purpose. In this regard, it is important to remember that a perfect fit between ends and means is not required. *Verniero,* 119 F.3d at 1098. As the Third Circuit explained:

An absence of remedial, objective purpose is not demonstrated by pointing out that the legislature did not address what might be perceived as another aspect of the same problem or that there may be a means of serving the legislative end that would be more effective than the means chosen. If a reasonable legislator motivated solely by the declared remedial goals could have believed the means chosen were justified by those goals, then an objective observer would have no basis for perceiving a punitive purpose in the adoption of those means.

*Id.*

Plaintiff argues that to be valid as a nonpunitive measure, the statute must provide for the "risk assessment" of offenders. Risk assessments involve the evaluation of an offender to determine that individual offender's risk of recidivism and to assess the magnitude of harm that would likely result from a subsequent sex offense. They are provided for in most, if not all other, sex offender registration and notification statutes.

Under risk assessment systems, the greater the threat an individual offender poses to society, the greater the level of notification permitted or required. Factors typically relied upon in making the risk assessment include the offender's criminal history; conditions of release that might minimize the risk of re-offense, such as whether the offender is in treatment or therapy; physical conditions that might minimize the risk of re-offense, such as advanced age or debilitating illness; whether psychological profiles indicate a risk of recidivism; and recent behavior, including recent expressions of intent to commit additional offenses. *See, e.g., Pataki,* 120 F.3d at 1268. On the basis of this risk assessment, an offender is placed in one of several, typically three, categories.

Registry information concerning offenders in the category posing the lowest risk is subject to the narrowest range of disclosure. Such information, for example, may be provided only to law enforcement agencies. Registry information concerning offenders in the second category is provided to a broader audience. Such information may be additionally provided to community organizations

with vulnerable populations, including schools, shelters, and day-care centers, and made available to the public on a limited basis. Information concerning offenders in the category believed to pose the greatest risk is subject to the broadest disclosure and is typically made available to members of the public upon request. *Id.* at 1268–70. Under some statutes, the amount of information disclosed also increases as the risk level increases. For example, an exact street address may only be provided for level three offenders.

Defendant argues that such a risk assessment is not constitutionally required, but that the legislature nonetheless effectively performed a general risk assessment by carefully defining and limiting the crimes that a person must be convicted of before being subject to the statute. This Court agrees that a risk assessment is not constitutionally required. The Utah legislature is clearly free to develop a registration and notification system that does not involve risk assessments, and Plaintiff cites no authority in support of his assertion to the contrary.

However, the legislature is not free from the constitutional requirement that the means selected be reasonably related to the statute's nonpunitive purpose of preventing additional sex offenses, and the Department's intended course of action fails this prerequisite. Registry information posted on the Department's website will be available without restriction to a global audience, many members of whom will be at no risk of encountering the registered offenders.

A reasonable legislator motivated solely by the aim of preventing additional sex offenses could not believe that the means chosen by the Department were justified by that aim. On the contrary, the means chosen by the Department appear to be motivated by a desire to reduce to the barest minimum the amount of consideration and effort required to carry out the important statutory aims entrusted to it.

This Court is not aware of any sex offender registration and notification acts that have passed constitutional muster that do not contain procedural safeguards designed to ensure that the burden imposed on registrants

does not exceed the burden inherent in accomplishment of such acts' goals. *See, e.g., Verniero,* 119 F.3d at 1098 ("the statutory scheme is a measured response to the identified problem"); *Pataki,* 120 F.3d at 1282 (*"the Act also contains a number of moderating provisions capable of greatly limiting the extent of notification"*); *Russell,* 124 F.3d at 1090 (*"The law contains careful safeguards to prevent notification in cases where it is not warranted and to avoid dissemination of the information beyond the area where it is likely to have the intended remedial effect."*).

Such safeguards were contained in the statute before the 1998 amendments. Under the 1996 version, the Department was specifically directed to "establish security systems to ensure that only [those authorized by statute to receive registry information] may gain access to information" and authorized to enact regulations to instruct those receiving registry information concerning its appropriate use. § 77–27–21.5(2)(c) and 18(c) (1996 Supp.). Plaintiff does not challenge the constitutionality of the 1996 version, and has indicated that he will not oppose its enforcement. *Plaintiff's Reply Memorandum, page 8.*

It is not the prerogative of either this Court or Plaintiff to dictate the form safeguards must take, but to the extent the statute is to be applied retroactively, they are constitutionally required.

### D. Conclusion.

As applied to offenders who completed all the terms and conditions of their sentence and probation prior to July 1, 1998, the public disclosure provisions of the 1998 statute violate the Double Jeopardy and Ex Post Facto Clauses insofar as the statute fails to limit the extent of disclosure to the degree necessary to accomplish the statute's nonpunitive goals of assisting in the investigation of sex-related crimes, apprehending offenders, and providing registry information to the possible victims of recidivist offenders.

Defendant has stipulated that it will administer the statute in accordance with this Court's decision; therefore, an injunction is not necessary and will not issue. Again, this

ruling does not apply to the statute's registration provisions, which have not been challenged in this lawsuit.

## II. Constitutionality Under the Equal Protection Clause.

■ Plaintiff asserts that the public disclosure provisions of the statute violate the Equal Protection Clause of the Fourteenth Amendment by classifying him with other sex offenders who pose different or higher risks of reoffense. As an initial matter, Plaintiff has provided nothing beyond the self-serving affidavits of himself and his wife to support his belief that the threat he poses is minimal.

### A. Legal Standard.

■ The degree of scrutiny to which a statute alleged to violate the Equal Protection Clause will be subject depends on the class of persons or interest affected by the statute. "Laws dealing with suspect classifications or fundamental rights are subject to strict scrutiny and quasi-suspect classifications, like gender, are subject to intermediate scrutiny. All other classifications need only be rationally related to a legitimate government interest." *Farwell*, 999 F.Supp. at 193–94. Persons who commit certain sex offenses are neither part of a suspect nor quasi-suspect classification, and Plaintiff has not argued otherwise. Therefore, the legislature's decision to subject all offenders, as offenders are defined under the statute, to the statute's public disclosure provisions must be upheld as long as that legislative determination is rationally related to a legitimate government end, that is, "[a]s long as the relationship between the classification and the government purpose is not 'so attenuated as to render the decision arbitrary or irrational.'" *Id.* at 195 (quoting *Cleburne v. Cleburne Living Center*, 473 U.S. 432, 446–47, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985)).

### B. Analysis.

As other courts have found, "if the purpose of the legislation is to guard against sexual offenses, surely it is rational to proceed by extending the class of persons to whom the regulatory scheme applies to those who have been convicted of sexual offenses in the past." *Id.* at 194 *(internal quotation marks and citation omitted).* The Equal Protection Clause requires no more than that. Risk assessments and fine-tuned calibrations between predicted risk and scope of disclosure are simply not required.

## III. Constitutionality Under the Due Process Clause.

Finally, Plaintiff alleges that the public disclosure provisions violate the Due Process Clause of the Fourteenth Amendment by depriving offenders of their liberty interests in privacy and reputation without sufficient procedural due process.

### A. Legal Standard.

■ A two-step inquiry governs. Under the first step, the court must determine whether "there exists a liberty or property interest which has been interfered with by the state." Under the second step, the court must determine "whether the procedures attendant upon that deprivation were constitutionally sufficient." *Farwell*, 999 F.Supp. at 195 (quoting *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989)).

### B. Analysis.

■ "The Supreme Court has expressly held that harm to reputation alone does not implicate the procedural due process guarantees of the Fourteenth Amendment." *Farwell*, 999 F.Supp. at 195 (quoting *Paul v. Davis*, 424 U.S. 693, 701–02, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976)). "Reputational harm or stigma must be coupled with a loss of or adverse effect on a person's prior legal status or rights." *Id.* Like the plaintiff in *Farwell*, Plaintiff argues that the statute imposes such an additional adverse affect by violating his protected right of privacy.

Registry information regarding a particular offender consists of the offender's name and address, the names or aliases the offender is or has been known by; a physical description, including age, height, weight, eye and hair color; the type of vehicle(s) the offender drives; a current photograph; the

crimes the offender was charged with and convicted of; and a description of the offender's primary and secondary targets and method of offense. *Utah Code Ann. § 77–27–21.5(10)–(11) (Supp.1998).* Such information is not considered private. *See, e.g., Russell,* 124 F.3d at 1094 (concluding that similar information collected and disseminated under Washington's statute "is already fully available to the public and is not constitutionally protected").

Because Plaintiff cannot establish that disclosure impairs a constitutionally-protected interest, he cannot establish a cognizable injury to his reputation.

### Conclusion

Plaintiff's motion for summary judgment is granted to the extent specified in section I.D., above. Plaintiff's claims are otherwise dismissed with prejudice. Each side is to bear its own costs.