**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 28 2000**

**PATRICK FISHER**
**Clerk**

<u>PUBLISH</u>

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

JON FEMEDEER, a pseudonym,

      Plaintiff-Appellee/
      Cross-Appellant,

v.

H.L. "PETE" HAUN, Executive
Director, Utah Department of
Corrections,

      Defendant-Appellant/
      Cross-Appellee.

Nos. 99-4082 and 99-4093

**Appeal from the United States District Court**
**for the District of Utah**
**(D.C. No. 98-CV-572-K)**

James H. Beadles, Assistant Attorney General (Jan Graham, Utah Attorney General with him on the briefs), Salt Lake City, Utah, for Defendant-Appellant-Cross-Appellee.

Brian M. Barnard (James L. Harris, Jr., with him on the briefs), Utah Legal Clinic, Salt Lake City, Utah and Stephen C. Clark, American Civil Liberties Union of Utah, Salt Lake City, Utah, with him on the briefs, for Plaintiff-Appellee-Cross-Appellant.

Before **BALDOCK** , **EBEL** and **MURPHY** , Circuit Judges.

**EBEL**, Circuit Judge.

This case primarily concerns whether Utah's sex offender notification scheme, which includes posting information about convicted sex offenders on the Internet, violates the Double Jeopardy and Ex Post Facto Clauses of the U.S. Constitution when applied to offenders who committed their crimes prior to the effective date of the enabling legislation. Granting in part Plaintiff's motion for summary judgment, the district court ruled that the scheme violated those constitutional provisions with respect to offenders who had completed their sentences and probation as of the effective date, but the court rejected Plaintiff's other asserted grounds for relief. See Femedeer v. Haun, 35 F. Supp.2d 852, 861 (D. Utah 1999). Defendant appealed the summary judgment order, and Plaintiff cross-appealed on the scope of relief, the dismissal of his remaining claims, and the district court's award of attorney's fees. We exercise jurisdiction pursuant to 28 U.S.C. § 1291, and we AFFIRM in part, REVERSE in part, and REMAND this case for further proceedings.

## FILING BY PSEUDONYM

Appellee filed this action in the United States District Court for the District of Utah under the pseudonym of Jon Femedeer, apparently wishing to prevent widespread disclosure of his status as a sex offender.

Proceeding under a pseudonym in federal court is, by all accounts, "an unusual procedure." MM. v. Zavaras, 139 F.3d 798, 800 (10th Cir. 1998) (quotation omitted). Moreover, there does not appear to be any specific statute or rule supporting the practice. See id. To the contrary, the Federal Rules of Civil Procedure mandate that all pleadings contain the name of the parties, see Fed. R. Civ. P. 10(a), and Rule 17(a) specifically states that "[e]very action shall be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a).

Nevertheless, we have recognized that there may be exceptional circumstances warranting some form of anonymity in judicial proceedings. As the Eleventh Circuit has explained:

> Lawsuits are public events. A plaintiff should be permitted to proceed anonymously only in those exceptional cases involving matters of a highly sensitive and personal nature, real danger of physical harm, or where the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity. The risk that a plaintiff may suffer some embarrassment is not enough.

Doe v. Frank, 951 F.2d 320, 324 (11th Cir. 1992). We have held that it is proper to weigh the public interest in determining whether some form of anonymity is warranted. See Zavaras, 139 F.3d at 802-03.

Here, the public has an important interest in access to legal proceedings, particularly those attacking the constitutionality of popularly enacted legislation. And, without Appellee's identity in the public record, it is difficult to apply legal principles of res judicata and collateral estoppel. While we appreciate Appellee's

interest in attempting to prevent disclosure of his status as a sex offender, such disclosure has presumably already occurred in the underlying conviction. Further, Appellee has not established real, imminent personal danger, and the disclosure of Appellee's identity in the caption of this lawsuit is not coterminous to the harm he is seeking to avoid by filing this claim. The posting of his identity and other personal information on the Internet is likely to be more extensive than is the exposure resulting from his name on the caption of this lawsuit. Ordinarily, those using the courts must be prepared to accept the public scrutiny that is an inherent part of public trials.

Within twenty days, Appellee is ordered to file a sworn affidavit in this court under seal revealing his true identity. If he takes any further action in this litigation, the caption shall bear his correct name unless this court has first granted either a motion to seal the caption or to authorize the matter to proceed by way of a pseudonym.

## BACKGROUND

Plaintiff-Appellee-Cross-Appellant Jon Femedeer brought the present action under 42 U.S.C. § 1983, alleging that Utah's recently amended sex offender registration and notification system violates various federal constitutional guarantees. Femedeer also included analogous Utah state constitutional claims in his complaint. The suit was brought against Defendants-

Appellants-Cross-Appellees N.D. "Pete" Haun, as Executive Director of Utah's Department of Corrections, and John and Jane Does representing various unknown Department of Corrections employees, officers, and agents (collectively, "Appellants" or "Utah").

The facts in this case are undisputed. Since 1987, Utah has required convicted sex offenders[1] to comply with a registration and notification system upon their release from confinement. Sex offenders have been required to provide the following information to the Department of Corrections: (1) their name, including all aliases by which the offender is known; (2) their current address; (3) a physical description; (4) the type of vehicle driven by the offender; and (5) a current photograph of the offender. See Utah Code Ann. § 77-27-21.5(10).

---

[1] The listed sex offenses are incest, a third-degree felony; lewdness involving a child, a class A misdemeanor; sexual exploitation of a minor, a second-degree felony; aggravated exploitation of prostitution, a second-degree felony; child kidnaping, a first-degree felony; and any conviction for soliciting or conspiring to commit any of the following crimes: unlawful sexual activity with a minor, a potential third-degree felony; sexual abuse of a minor, a class A misdemeanor; unlawful sexual conduct with a 16- or 17-year old, a third-degree felony; rape, a first-degree felony; rape of a child, a first-degree felony; object rape, a first-degree felony; object rape of a child, a first-degree felony; sodomy, a class B misdemeanor; forcible sodomy, a first-degree felony; sodomy on a child, a first-degree felony; forcible sexual abuse, a second-degree felony; sexual abuse of a child, a second-degree felony; aggravated sexual abuse of a child, a first- degree felony; and aggravated sexual assault, a first-degree felony.

Initially, sex offender registry information was disclosed only to law enforcement agencies, education licensing authorities, and the Department of Corrections. In 1996, however, Utah amended the law to allow disclosure of the information to members of the public who submitted written requests to the Department of Corrections (the "Department"). The request was required to indicate that the individual seeking the information was either a victim of a sex offense or resided in an area where one suspected a sex offender resided. The Department would only grant the requests of persons living within the offender's zip code or an adjoining one. The 1996 amendments specifically stated that they were not to apply retroactively.

In 1998, Utah's state legislature again amended the registration and notification statute. It is these most recent amendments that are the subject of the current controversy. The first significant change to the law was the elimination of the requirement that it not be applied retroactively. Thus, on its face, the law now applies to any sex offender, regardless of when he or she committed the crime. The second change was the elimination of the geographical restriction on dissemination of the information, and the addition of the statement that all information in the registry was now "public." Utah Code Ann. § 77-27-21.5(13).

Apparently, the impetus for these changes was a significant backlog of information requests, specifically those of the Boy Scouts of America, which

wanted to review information on its 100,000 volunteers. Unrestricted by the new statute, and hoping to alleviate the request backlog, the Department posted the sex offender registry information on its web site. Access to the information is not controlled in any way; anyone with access to the Internet can access all of the registry information, regardless of their place of residence or any other specific need.

Femedeer moved the district court for summary judgment on several grounds. His motion was granted in part in an order dated January 22, 1999. (See Femedeer, 35 F. Supp.2d at 852.) The district court agreed with Femedeer that the new system constituted "punishment" and therefore violated the Double Jeopardy and Ex Post Facto clauses with respect to offenders who had completed their sentences and probation as of July 1, 1998, the effective date of the amendments. Femedeer, 35 F. Supp.2d at 859. The court explicitly rejected Femedeer's Equal Protection and Due Process Clause claims, and dismissed the remaining claims with prejudice. Id. at 860-61. Femedeer then filed motions for a new trial and for attorney's fees. The court denied the former and granted the latter. Finding that Femedeer was not entirely successful in his suit, the court reduced the total fee award by sixty percent. Femedeer filed a motion to collect additional fees for pursuing the initial fees motion, but the court declared that it

had taken these additional fees into consideration in setting the first percentage amount. This appeal and cross appeal followed.

## DISCUSSION

Utah has appealed the district court's conclusion that the state's notification scheme by posting information on the Internet violates the Ex Post Facto and Double Jeopardy Clauses as applied to those sex offenders whose sentences and probation had been completed by the statute's effective date. Femedeer has filed a cross-appeal, claiming that the district court erred by dismissing his remaining claims *sua sponte*, that the district court incorrectly determined the applicable time frame regarding the ex post facto violations, and that the district court erred in calculating its award of attorney's fees. We shall first address Utah's claims on appeal, and then turn to Femedeer's cross-appeal.

### I. Ex Post Facto

We review a challenge to a statute under the Ex Post Facto Clause de novo. See Lustgarden v. Gunter, 966 F.2d 552, 553 (10th Cir. 1992).

Article I, Section 9 of the U.S. Constitution, commonly known as the Ex Post Facto Clause, provides that "No . . . ex post facto Law shall be passed." Among those laws prohibited by the Ex Post Facto Clause are those that "make[] more burdensome the punishment for a crime, after its commission." Collins v.

Youngblood, 497 U.S. 37, 42, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990) (citation and quotation omitted). Thus, the threshold inquiry for assessing a violation of the Ex Post Facto Clause in the present case is whether Utah's Internet notification program constitutes additional criminal punishment for the crimes previously committed by those subject to its provisions. See Kansas v. Hendricks, 521 U.S. 346, 371, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997). If the notification measures are deemed civil rather than criminal in nature, they present no ex post facto violation.

The Supreme Court recently laid out the proper test for distinguishing between civil and criminal penalties:

> Whether a particular punishment is criminal or civil is, at least initially, a matter of statutory construction. A court must first ask whether the legislature, in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other. Even in those cases where the legislature has indicated an intention to establish a civil penalty, we have inquired further whether the statutory scheme was so punitive either in purpose or effect as to transform what was clearly intended as a civil remedy into a criminal penalty.
>
> In making this latter determination, the factors listed in Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168-169, 83 S. Ct. 554, 567-568, 9 L. Ed.2d 644 (1963), provide useful guideposts, including: (1) "[w]hether the sanction involves an affirmative disability or restraint"; (2) "whether it has historically been regarded as a punishment"; (3) "whether it comes into play only on a finding of scienter"; (4) "whether its operation will promote the traditional aims of punishment–retribution and deterrence"; (5) "whether the behavior to which it applies is already a crime"; (6) "whether an alternative purpose to which it may rationally be connected is

assignable for it"; and (7) "whether it appears excessive in relation to the alternative purpose assigned." It is important to note, however, that "these factors must be considered in relation to the statute on its face," id. at 169, 83 S. Ct. at 568, and only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty.

Hudson v. United States, 522 U.S. 93, 99-100, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997) (alterations and additional citations and quotations omitted). Thus, our first task is to discern whether the intent of the Utah legislature in allowing the Internet notification program was that the measure operate in a civil or criminal manner. If we determine that the legislature intended to establish a civil penalty, we must then inquire whether there exists the "clearest proof" that the measure is so punitive in purpose or effect as to override the legislature's intent.

A. Legislative Intent

The intent of the Utah legislature in passing the statute that allowed for Internet notification was clearly to establish a civil remedy. As the district court aptly noted,

> Legislative intent to enact a nonpunitive measure is ascertainable from the simple fact that the legislature placed the statute in the civil code as opposed to the criminal code. See Hendricks, 117 S. Ct. at 2082. Moreover, the statute contains an unambiguous statement of its purpose in § 77-27-21.5(2), which directs the Department to collect registry information and make it available to the public "to assist in investigating sex-related crimes and in apprehending offenders." This intent is clearly remedial.
>
> Remedial intent is also evident from the statement the statute's sponsor gave in setting the measure before the House of

- 10 -

Representatives.  Representative Brian Allen explained that the measure was motivated primarily by concerns of administrative convenience arising from the Department's inability to process and respond to the numerous legitimate requests for registry information that it had received, including a request to check approximately 100,000 volunteers submitted by the Boy Scouts.  The 1998 amendments were simply intended to give the Department flexibility to adopt an administratively convenient disclosure method.

Femedeer, 35 F. Supp.2d at 856.  Femedeer has not challenged this finding on appeal, and thus any argument he may have to the contrary has been waived. See Harris v. Champion, 51 F.3d 901, 905 (10th Cir. 1995)  Moreover, our review of the statute on its face supports the conclusion that the legislature's intent was indeed to establish a civil remedy.

B. Effect

We must next examine whether there is the "clearest proof" that the notification scheme is so punitive in purpose or effect as to overcome the legislature's civil intent.  It is at this point in the analysis that the district court erred by elevating the excessiveness inquiry to nearly dispositive status to the exclusion of the many other factors that the Supreme Court has listed for consideration.  Although discussing other factors relevant to the effect of posting sex offender information on the Internet, the district court's opinion appears to ascribe paramount importance to the apparent absence of procedural safeguards and potentially unlimited disclosure of the registry information.  See Femedeer, 35 F. Supp.2d at 858-59.

The Supreme Court, however, has specifically disapproved of placing such overwhelming emphasis on excessiveness. In Hudson, the Court rejected just that approach which had been taken in United States v. Halper, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), stating that Halper had erroneously

> focused on whether the sanction, regardless of whether it was civil or criminal, was so grossly disproportionate to the harm caused as to constitute "punishment." In so doing, the [Halper] Court elevated a single Kennedy factor–whether the sanction appeared excessive in relation to its nonpunitive purposes–to dispositive status. But as we emphasized in Kennedy itself, no one factor should be considered controlling as they may often point in differing directions.

Hudson, 522 U.S. at 101 (quotation and citation omitted). Rather, we must weigh each of the relevant Kennedy factors in order to determine the sanction's effect. See id. at 99-100.

We turn now to each of those factors.

(1) Affirmative disability or restraint.

Utah's Internet notification program does not work an affirmative disability or restraint in the sense traditionally associated with punishment. Although sex offenders must register certain information with the Department, which information is then subject to widespread notification, they are nevertheless free to live where they choose, come and go as they please, and seek whatever employment they may desire. By way of comparison, the Supreme Court in Hudson concluded that the payment of a monetary fine, coupled with an indefinite

ban on working in the banking industry, did not constitute an affirmative disability or restraint. See Hudson, 522 U.S. at 104 ("[T]he sanctions imposed do not involve an 'affirmative disability or restraint,' as that term is normally understood. While petitioners have been prohibited from further participating in the banking industry, this is certainly nothing approaching the infamous punishment of imprisonment.") (citation and quotation omitted); see also Cutshall v. Sundquist, 193 F.3d 466, 474 (6th Cir. 1999) (finding that Tennessee's sex offender registration and notification scheme did not impose an affirmative disability or restraint); Russell v. Gregoire, 124 F.3d 1079, 1092 (9th Cir. 1997) (reaching the same conclusion with respect to a similar Washington statute). In the present case, notification does not by itself prohibit sex offenders from pursuing any vocation or avocation available to other members of the public, and we therefore conclude that this factor weighs against finding that the statute is punitive in purpose or effect.

(2) Historically regarded as punishment.

This factor likewise suggests that public accessability of information concerning a sex offender's conviction, including accessability of that information through the Internet, is not punishment. Although at first glance it may be tempting to analogize Utah's notification scheme to rituals of public

- 13 -

shaming like that depicted in Nathaniel Hawthorne's *Scarlet Letter*, such a comparison would be inapt. As the Third Circuit has recently explained:

> Nor can we accept the suggested analogy between notification's re-publication of information publicly available at the time of a sex offender's trial and the holding of a convicted defendant up to public ridicule. Public shaming, humiliation and banishment all involve more than the dissemination of information. State dissemination of information about a crime and its perpetrators was unnecessary in colonial times because all in the colonial settlement would have knowledge of these matters. Rather, these colonial practices inflicted punishment because they either physically held the person up before his or her fellow citizens for shaming or physically removed him or her from the community.
>
> The "sting" of [New Jersey's sex offender notification scheme] results not from their being publicly displayed for ridicule and shaming but rather from the dissemination of accurate public record information about their past criminal activities and a risk assessment by responsible public agencies based on that information. This distinction makes a substantial difference when one looks for the relevant historical understanding of our society. Dissemination of information about criminal activity has always held the potential for substantial negative consequences for those involved in that activity. Dissemination of such information in and of itself, however, has never been regarded as punishment when done in furtherance of a legitimate governmental interest.
>
> When there is probable cause to believe that someone has committed a crime, our law has always insisted on public indictment, public trial, and public imposition of sentence, all of which necessarily entail public dissemination of information about the alleged activities of the accused.

E.B. v. Verniero, 119 F.3d 1077, 1099-1100 (3d Cir. 1997).[2]

---

[2] New Jersey's notification scheme contained an element of risk assessment

(continued...)

Under Utah's law, registry information is made widely available, but it is not broadcast in a manner approaching the historical examples of public shaming. Interested individuals must still make an affirmative effort to retrieve the information. Internet notification works merely a technological extension, not a sea change, in our nation's long history of making information public regarding criminal offenses. Thus, this factor also weighs against finding Utah's scheme punitive in purpose or effect.

(3) Applies on finding of scienter.

Traditionally, sanctions conditioned upon a finding of scienter are more likely to be considered criminal rather than civil in nature. See Kennedy, 372 U.S. at 168 & n.24. Hudson indicates that we should conduct this inquiry by determining whether the challenged statute contained a scienter requirement on its face, rather than by looking at the offenses underlying an individual's classification as a sex offender. In Hudson, the Court considered whether statutory provisions allowing for the imposition of money penalties (12 U.S.C. §§ 93(b) & 504) and debarment from the banking industry (12 U.S.C.

---

[2](...continued)
that is absent from Utah's system. See Verniero, 119 F.3d at 1099. This distinction, however, is relevant primarily in terms of evaluating the seventh Kennedy factor, excessiveness. Thus, despite the differences in the New Jersey and Utah schemes, the Third Circuit's discussion of whether notification has historically been regarded as punishment is instructive.

§ 1818(e)(1)(C)(ii)) were, in effect, criminal punishments. See Hudson, 522 U.S. at 104-05. Significantly, those provisions authorized their respective sanctions where the individual had violated various other laws. See 12 U.S.C. §§ 93(b), 504, & 1818(e)(1)(C)(ii). The Court in Hudson, however, apparently limited its search for a scienter requirement to the face of these provisions without inquiring into the state of mind required for the underlying violations. See Hudson, 522 U.S. at 104-05. Accordingly, we limit our examination to the face of the Utah statute. See also Sundquist, 193 F.3d at 475.

An examination of the Utah statute reveals that the notification requirements do not come into play only on a finding of scienter. Under the statute, all defined "sex offenders" must register and subject themselves to notification. See Utah Code Ann. § 77-27-21.5(10). The statute defines "sex offender" to mean

> any person convicted by this state or who enters a plea in abeyance for violating Section 76-7-102, 76-9-702.5. 76-5a-3, 76-10-1306, or 76-5-301.1 or of committing or attempting, soliciting, or conspiring to commit a felony, under Title 76, Chapter 5, Part 4, Sexual Offenses, and any person convicted by any other state or the United States government of an offense which if committed or attempted in this state would be punishable as one or more of these offenses. "Sex offender" also means all persons committed to a state mental hospital by reason of their mental incapacity and their commission or alleged commission of one or more offenses listed in this subsection.

Utah Code Ann. § 77-27-21.5(1)(d). Thus, on its face, the statute does not impose a scienter requirement, and we therefore conclude that this factor as well

- 16 -

weighs against finding that the statute has the purpose or effect of imposing criminal punishment.[3]

(4) Promote traditional aims of punishment–retribution and deterrence.

This factor cuts both ways. The very existence of this lawsuit is indicative that many sex offenders would prefer not to have to comply with the statute's provisions calling for public disclosure of their crime of conviction, present location, appearance and the like. Consequently, Utah is perhaps further deterring them and others from perpetrating sex crimes. The Supreme Court has cautioned, however, that a sanction's deterrent effect does not necessarily mean that it must be classified as criminal. See United States v. Ursery, 518 U.S. 267, 292, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996) ("[T]hough [these] statutes may fairly be said to serve the purpose of deterrence, we long have held that this purpose may serve civil as well as criminal goals."). We have already concluded that the statute has civil purposes and effects of deterrence, avoidance and investigation. Thus, the

---

[3] We note that, even were we to conclude that reference to the underlying sex offenses is appropriate in discerning a scienter requirement, Utah's scheme does not apply only on a finding that certain crimes containing intent requirements have been committed. Rather, it also applies to those persons "committed to a state mental hospital by reason of their mental incapacity and their commission or alleged commission of one or more offenses listed in this subsection." Utah Code Ann. § 77-27-21.5(1)(d). Thus, some individuals are classified as sex offenders under the statute absent convictions requiring proof of intent. Cf. Sundquist, 193 F.3d at 475 (reaching a similar conclusion based on the observation that certain enumerated sex offenses "do not clearly specify a culpable mens rea").

fact that Utah's notification scheme attaches additional negative consequences to sex offenses does not alone render it criminal punishment. There are, therefore, mixed effects here and we conclude this factor is inconclusive.

(5) Behavior to which it applies is already a crime.

Where behavior triggering the sanction is itself a crime, we are more likely to infer that the sanction is itself criminal in nature. In United States v. Ward, 448 U.S. 242, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980), the Supreme Court held that the fact that the conduct triggering the challenged sanction was criminalized by another statute "seems to point toward a finding that [the sanction] is criminal in nature." Id. at 249-50. Nevertheless, the Court declined to put significant emphasis on this factor since "[w]e have noted on a number of occasions that 'Congress may impose both a criminal and a civil sanction in respect to the same act or omission.'" Id. at 250 (quoting Helvering v. Mitchell, 303 U.S. 391, 399 (1938)).

We reach a similar conclusion in the present case. Here, the triggering behavior is conviction of, or the alleged commission of (coupled with mental incapacity), certain sex crimes. This conduct is criminal in nature, although in the circumstance of mental incapacity, no conviction may have been obtained. Notwithstanding this association, Utah has sought to use the sex offender registry to aid in the civil purpose of prevention and investigation of future sex crimes.

- 18 -

Thus, although the connection between Internet notification and criminal behavior is clear, we accord only limited weight to this factor in light of the equally strong connection between notification and legitimate civil purposes.

(6) Whether the "good purpose" is rationally connected to the consequences.

As is evident from our discussion of the preceding factor, it is clear that the legitimate civil goals of deterrence, avoidance, and investigation are rationally connected to Utah's statute of public access to sex offender registry information, including access through the Internet. Considering the tremendous physical and psychological impact sex crimes have upon the victims as well as their harmful societal effects, concerns of recidivism certainly warrant legislatures' attention. We ask only whether the "good purpose" is rationally connected to the consequences. A rational connection between ends and means clearly exists in the present case, and we therefore conclude that this factor supports the conclusion that this statute does not have the effect of providing criminal punishment.

(7) Excessiveness.

The final Kennedy factor asks whether the sanction "appears excessive in relation to the alternative purpose assigned." Hudson, 522 U.S. at 99-100 (citation and quotation omitted). In the present case, the "alternative purpose

assigned" is to aid in the prevention, avoidance, and investigation of future sex offenses. In light of the substantial interests at stake, we do not think that Internet notification imposes excessive costs.

In reaching the opposite conclusion, the district court relied heavily on the fact that "[r]egistry information posted on the Department's website will be available without restriction to a global audience, many members of whom will be at no risk of encountering the registered offenders." Femedeer, 35 F. Supp.2d at 859. The district court failed to consider, however, that there will be a concomitant decline in the global audience's desire to receive Utah's registry information. That is, the farther removed one is from a sex offender's community and from Utah generally, the less likely one will be to have an interest in accessing this particular registry. To a large extent, therefore, the dangers resulting from widespread availability are negated by the decreasing likelihood that the information will actually be obtained.

Other states have chosen to incorporate more defined risk assessment mechanisms into their sex offender registry and notification schemes. See, e.g., Gregoire, 124 F.3d at 1082 (upholding Washington's scheme conditioning notification upon evidence of an offender's threat to the community); Doe v. Pataki, 120 F.3d 1263, 1268, 1285 (2d Cir. 1997) (upholding New York's three-tiered notification scheme); Verniero, 119 F.3d at 1111 (upholding New Jersey's

three-tiered notification scheme). However, a statute is not necessarily excessive for purposes of this Kennedy factor simply because a state has perhaps not achieved a perfect fit between ends and means.

In sum, the considerable assistance Internet notification will offer in the prevention, avoidance and investigation of these serious and damaging crimes justifies the means employed. We therefore conclude that Utah's notification scheme is not excessive in relation to this legitimate purpose.

In total, only the fifth Kennedy factor even somewhat suggests that the Internet notification scheme constitutes criminal punishment. The equivocal support of this factor, however, does not come even close to the "clearest proof" necessary to overcome the civil intent of Utah's legislature. Accordingly, we conclude that Utah's notification scheme imposes only a civil burden upon sex offenders and therefore does not run afoul of the Ex Post Facto Clause.

## II. Double Jeopardy

We review Femedeer's claims under the Double Jeopardy Clause de novo. See United States v. Pearson, 203 F.3d 1243, 1267 (10th Cir. 2000).

The Double Jeopardy Clause of the Fifth Amendment provides: "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. Amend. V. "The Clause serves the function of preventing

both successive punishments and successive prosecutions.  The protection against multiple punishments prohibits the Government from punishing twice, or attempting a second time to punish criminally for the same offense." Ursery, 518 U.S. at 273 (internal quotations and citations omitted).

For the reasons stated above, we similarly conclude that Utah's scheme of public disclosure of sex offender information does not constitute criminal punishment under the Double Jeopardy Clause.  See Hendricks, 521 U.S. at 369-71.  As a result, we also conclude that the scheme presents no double jeopardy violation.[4]

## III. Cross Appeal

Femedeer's sole surviving complaint on cross appeal is that the district court erred in dismissing his remaining claims sua sponte.  We have held, however, that "[a] court may grant summary judgment sua sponte 'so long as the losing party was on notice that [it] had to come forward with all of [its]

---

[4] Because we have determined that Utah's notification scheme violates neither the Ex Post Facto Clause nor the Double Jeopardy Clause, we need not address Femedeer's argument on cross appeal that the district judge improperly determined which sex offenders should be exempt under the Ex Post Facto Clause from Utah's new notification law.  Likewise, our reversal of the district court's partial grant of summary judgment to Femedeer requires that we remand the issue of attorney's fees for reevaluation in light of the fact that Femedeer is no longer a prevailing party in this litigation.

evidence.'" Sports Racing Servs. v. Sports Car Club of America, Inc., 131 F.3d 874, 892 (10th Cir. 1997) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986)).

In disposing of this case, the district court granted summary judgment to Femedeer on the double jeopardy and ex post facto claims. See Femedeer, 35 F. Supp.2d at 859. The court also considered and rejected his arguments under the Equal Protection and Due Process Clauses of the Fourteenth Amendment, both of which Femedeer presented in his motion for summary judgment. See id. at 860-61. The court then stated that "Plaintiff's claims are otherwise dismissed with prejudice." Id. at 861. Femedeer argues that this dismissal deprived him of an opportunity to present additional claims advanced in his complaint but not briefed in his summary judgment motion. We find no reversible error, however, in the district court's dismissal of these additional claims.

Femedeer argues that the district court should not have dismissed his claims under the Utah Constitution, but instead should have declined to exercise supplemental jurisdiction and allowed him to pursue these claims in state court. It appears, however, that the Utah claims Femedeer alleged in his complaint are analogues to their federal constitutional counterparts. Compare Utah Const. Art. I, §§ 7, 9, 18, 24 with U.S. Const. Art. I, § 9, Amends. 8, 14. Furthermore, the state of Utah has represented that there are no material differences between these

- 23 -

state and federal constitutional provisions for present purposes. Our comparison of these provisions supports the state's view, and Femedeer does not challenge this characterization. Accordingly, Femedeer was not prejudiced by the dismissal of his state constitutional claims because the analogous federal claims were, with one exception, properly addressed on the merits.[5]

The lone exception appears to be Femedeer's claim that Utah's notification scheme constitutes cruel and unusual punishment in violation of the Eighth Amendment to the U.S. Constitution and Article I, § 9 of the Utah Constitution. The district court did not separately discuss this potential argument in its disposition of this case. On appeal to this court, however, Femedeer says only that his "remaining claims" were improperly dismissed without specifically identifying the remaining federal claims. Femedeer has failed to explain how the evidence and arguments he would present in support of the Eighth Amendment claim would have differed from the evidence presented to the district court in support of his other federal constitutional claims. Rather, Femedeer summarily states "the district court erred by dismissing *sua sponte* several of Appellee's claims with prejudice."

---

[5] With respect to Femedeer's claim under the Bill of Attainder Clause found in Article I, § 9 of the U.S. Constitution, we agree with the district court that Femedeer waived his argument on that point by improperly collapsing it with the Ex Post Facto and Double Jeopardy Clauses. See Femedeer, 35 F. Supp.2d at 855 n.1.

On appeal, however, parties must do more than offer vague and unexplained complaints of error. "[P]erfunctory complaints [that] fail to frame and develop an issue [are not] sufficient to invoke appellate review." Murrell v. Shalala, 43 F.3d 1388, 1389 n. 2. (10th Cir. 1994); see also Hartmann v. Prudential Ins. Co. of America, 9 F.3d 1207, 1212 (7th Cir. 1993) ("Failure to press a point (even if it is mentioned) and to support it with proper argument and authority forfeits it . . . ."); United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) (noting the "settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived"). Thus, we conclude that Femedeer's perfunctory references are insufficient to resurrect an argument that the district court failed to give sufficient notice that his cruel and unusual punishment claims would be disposed of as well.

In sum, we find that the district court did not commit reversible error by dismissing all of the claims presented by Femedeer's complaint.

**CONCLUSION**

We conclude that the district court erred in determining that Utah's Internet notification scheme violated the Ex Post Facto and Double Jeopardy Clauses of the U.S. Constitution. Accordingly, the district court's partial grant of summary judgment to Femedeer is REVERSED. The district court's dismissal of Femedeer's remaining claims with prejudice is AFFIRMED. The district court's

award of attorney's fees is VACATED and the case is REMANDED for further proceedings consistent with this opinion.